```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

EDWARD THOMAS,                      :
                                    :
          Petitioner,               :
                                    :
v.                                  :   CASE NO. 3:18-CV-1707(RNC)
                                    :
UNITED STATES,                      :
                                    :
          Respondent.               :
```

## RULING AND ORDER

Petitioner Edward Thomas is serving a sentence of 210 months' imprisonment for sex trafficking offenses. He brings this action under 28 U.S.C. § 2255 claiming principally that his trial counsel failed to provide effective assistance in violation of the Sixth Amendment.[1] The government contends that petitioner has failed to meet his burden of demonstrating ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and that his other claims are procedurally barred. I agree and therefore deny the petition.

I.

Petitioner was charged with one count of conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C.

---

[1] Petitioner has filed a motion to amend his petition, ECF No. 14. As the government notes, the "substance" of the motion to amend is essentially a "further reply" to the government's opposition. Gov't 2d Resp., ECF No. 15, at 1. The government does not object to the motion to amend. <u>Id.</u> Accordingly, the motion to amend is granted, and the arguments raised in the motion are considered along with those in the original petition.

1

§ 1594(c), and two counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c).  Prior to trial, he filed a motion to suppress various items of evidence, including the contents of a laptop bag – a computer and digital camera - that law enforcement agents seized in a hotel room he was renting in connection with his sex trafficking activities.  The motion to suppress was denied after an evidentiary hearing.  United States v. Thomas, No. 14-cr-31(RNC), 2015 WL 164075 (D. Conn. Jan. 13, 2015).  A jury found petitioner guilty on all three counts, and he was sentenced to 210 months' imprisonment on each count, to run concurrently.  The Court of Appeals affirmed the convictions and sentence, observing that the evidence of petitioner's guilt was "overwhelming."  United States v. Walters, 678 Fed. App'x 44, 47 (2d Cir. 2017).

II.

Under Strickland, petitioner's claims of ineffective assistance of counsel require him to demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) his counsel's deficient performance was prejudicial, resulting in "errors . . . so serious as to deprive [him] of a fair trial." Id. at 687.  This two-pronged test sets a "high bar."  See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("Surmounting Strickland's high bar is never an easy task.") (quoting Padilla

2

v. Kentucky, 559 U.S. 356, 371 (2010)).  Under the first prong of Strickland, petitioner must overcome a presumption that his counsel's performance was "within the wide range of reasonable professional assistance."  466 U.S. at 689.  "As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if 'there was no . . . tactical justification for the course taken.'"  Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam) (internal alteration omitted)).  Under the second prong, he must demonstrate that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

A.

To put petitioner's claims of ineffective assistance in proper context, it is necessary to revisit events that led to his arrest.  In October 2012, FBI Special Agent Timothy Kobelia received an alert from the National Center for Missing and Exploited Children (NCMEC) concerning an online advertisement posted on Backpage.com, a now-defunct website.  The NCMEC alert concerned an ad in the New Haven area for the services of a prostitute named "Rain," who appeared to be a minor.  Kobelia called the number listed in the ad and learned that "Rain" was

3

at a Howard Johnson hotel in Milford. Approximately two weeks later, Kobelia traveled to the hotel and showed the manager a photo of "Rain." The manager recognized the person in the photo, and said he believed she was staying in one of two rooms rented by a person named Kayla Walters. Kobelia obtained a copy of Walters's driver's license photo.

On November 8, 2012, NCMEC sent another alert to the FBI, again linking to a Backpage advertisement for "Rain." Special Agent James Wines noted that the ad appeared to be related in various ways to an online ad for sexual services by a woman named "Sunshine." He also noted that the photo of "Sunshine" appeared to match the driver's license photo of Kayla Walters. Wines called the telephone number in the ad for "Rain" to set up a "date" for that night. He was told to call again when he arrived at the hotel, at which point he would be directed to a specific room.

That night, Wines went to the hotel accompanied by other law enforcement officials. He repeatedly called the number for "Rain," to no avail. A hotel clerk told the agents that Walters was no longer on the guest registry, but there were three guests who each had rented two rooms. Based on information provided by the clerk, the agents were able to eliminate one of the three guests as a possible suspect, and chose to start their search with Rooms 202 and 205, which had been rented by petitioner.

4

On their way to the second floor, the agents encountered petitioner and Walters, who smelled of marijuana smoke. Petitioner also had a visible wad of cash in his jeans pocket. In response to questioning by the agents, petitioner and Walters said that they knew "Rain" but did not know where she was, and Walters disclosed that she – Walters - was staying in Room 202. Based on this information, the agents decided to go to Room 205.

When the agents arrived outside Room 205, lights were on inside the room, and the television was also on, but their knocks went unanswered. The agents retrieved a universal key from the front desk and entered the room, where they found "Rain" naked and asleep on a bed. She was groggy and disoriented at first, but gradually became more lucid, at which time agents were able to confirm that she was the minor discussed in the NCMEC alert. The agents noticed a closed laptop bag on another bed in the room. They left "Rain" (hereinafter "MV1") in the care of a female police officer and went back to the lobby.

In the lobby, Wines called the number associated with "Sunshine's" Backpage ad, and Walters' phone rang, so he seized the phone. The agents also seized the large wad of cash in petitioner's pocket. Around this time, Wines received an email from a law enforcement officer in Oregon, with information that MV1 had "come east" to "meet some pimp named 'Fire.'"

5

The agents then returned to Room 205. MV1 told them her clothing was in Room 202, so they went there to retrieve the clothes. While there, they noticed an open laptop with a screensaver that used the word "Fire." They were unable to determine which of several suitcases in the room belonged to MV1 but gathered some of her clothes, which they brought to her in Room 205. They subsequently went with MV1 to Room 202 to get her suitcase in anticipation of taking her to the hospital. While there, they seized the laptop with the "Fire" screensaver. The agents also seized the laptop bag from Room 205 on the ground that it probably contained evidence of trafficking, since the Backpage ads presumably had been posted from a computer. In the interim, an officer had seized a Blackberry phone from Thomas.

The agents inventoried all the items of property they had obtained from the two hotel rooms and from petitioner. Neither petitioner nor Walters was arrested that night. In December 2012, the government obtained search warrants for the electronic devices. The devices contained incriminating evidence, including explicit images of MV1 and Walters, some of which were used in the Backpage ads.

## B.

Petitioner claims his counsel was ineffective in failing to object to what he characterizes as "mixed expert/fact testimony"

6

by Agents Kobelia and Wines.  Specifically, he challenges his counsel's failure to object to testimony by the agents that (1) he and Walters smelled of marijuana smoke, (2) MV1 was "groggy" as if she were "under the influence of drugs" and (3) a laptop may be used for posting online advertisements.  Petitioner contends that this testimony was objectionable under Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony.  I agree with the government that neither prong of Strickland is satisfied as to this claim.

Counsel's failure to object to the testimony in question was not objectively unreasonable.  A law enforcement officer is not required to qualify as an expert under Rule 702 in order to testify that he detected the odor of marijuana smoke.  See United States v. Santana, 342 F.3d 60, 69 (1st Cir. 2003).[2] Similarly, the agents' testimony describing MV1 as "disoriented," "in a little bit of a stupor," and "groggy," as if "she had taken something prior to waking up," required no expertise.  See, e.g., United States v. Robinson, No. 16-cr-98 (CKK), 2017 WL 11496730, at *1 (D.D.C. June 30, 2017) ("Although the Court agrees that the opinion that an individual was

---

[2] See also In re Ondrel M., 918 A.2d 543, 554-55 (Md. Ct. Spec. App. 2007) ("[A]n expert is not required to identify the odor of marijuana.  No specialized knowledge or experience is required in order to be familiar with the smell of marijuana.  A witness need only to have encountered the smoking of marijuana in daily life to recognize the odor.").

7

actually 'on drugs' or 'under the influence' may be inappropriate for a lay witness to convey to the jury, it is permissible under Rule 701 for a lay witness to opine that an individual appeared to be under the influence."); United States v. Horn, 185 F. Supp. 2d 530, 560 (D. Md. 2002) ("There is near universal agreement that lay opinion testimony about whether someone was intoxicated is admissible . . . .") (collecting cases). And one need not qualify as an expert to testify that laptop computers enable people to post messages on the internet.

With regard to prejudice, counsel's failure to object to this testimony did not affect the outcome of the trial. The testimony was not a significant part of the government's proof of the elements of the offenses charged in the indictment. And, as the Court of Appeals stated, that proof was "overwhelming." Accordingly, there is no reasonable possibility that if the agents' testimony had been excluded, the outcome of the trial would have been different.

C.

Petitioner also claims that his counsel was ineffective in failing to conduct an adequate investigation into the veracity of the testimony of Agents Kobelia and Wines concerning their conduct at the hotel in Milford. For this claim, he relies primarily on his counsel's failure to interview MV1 concerning the agents' handling of the laptop bag found in room 205. He

asserts that MV1 told him the agents "searched the laptop bag in the hotel room and had in fact question[ed] her in regards to the cell phones inside the laptop bag in room 205." Pet. Mem. at 16. On the basis of this assertion, he claims that if his counsel had interviewed MV1, she would have said that the agents looked inside the laptop bag while they were in room 205, enabling his counsel to successfully argue for suppression of the laptop computer and camera that they found there.

It is unnecessary to consider whether petitioner's counsel can be faulted for failing to interview MV1. Even assuming that petitioner's counsel made no attempt to interview her, and that this omission was objectively unreasonable under Strickland (because it lacked any tactical justification), petitioner's claim fails because his theory of prejudice is untenable for several reasons.

First, the theory relies on factual assumptions that are implausible. The theory assumes that MV1 would have agreed to speak with petitioner's counsel, told him the same thing she allegedly told petitioner, and testified to the same effect at the suppression hearing. But it is unlikely that MV1 would have agreed to be interviewed by petitioner's counsel. As a minor victim of petitioner's trafficking, she was assisting the government in his prosecution, and interviewing her would have required the cooperation of her counsel, who had no incentive to

9

encourage her to submit to an interview.[3] That MV1 actually made the statement petitioner attributes to her – that the agents "searched" the bag and "questioned" her about cell phones - is theoretically possible. But it would be surprising for MV1 to use those terms, which seem tailored for a Fourth Amendment challenge, and given petitioner's history of obstructing justice in this case, it is difficult to give credence to his self-serving allegation, which might well be contrived.[4] In any event, if MV1 were to testify in line with petitioner's wishes, it would be difficult to credit her testimony over that of the agents in view of petitioner's efforts to get her to commit perjury.

Second, even if petitioner could have persuaded me at the suppression hearing that it was the agents who were committing perjury, not MV1, the contents of the laptop bag would have been admissible under the inevitable discovery doctrine. In the Second Circuit, this doctrine requires that (1) "the police had legitimate custody of the . . . property being searched, so that

---

[3] MV1 was incarcerated in Oregon for the four months preceding the suppression hearing, so interviewing her would have required the cooperation of her Oregon counsel.

[4] At sentencing, I found that petitioner had obstructed justice by attempting to suborn perjury from MV1 both prior to her anticipated appearance before the grand jury and prior to her trial testimony. See Sentencing Transcript, No. 3:14-cr-00031, ECF No. 213, at 22.

an inventory search would have been justified," (2) the law enforcement officials conducted inventory searches "pursuant to 'established' or 'standardized' procedures," and (3) "those procedures would have 'inevitably' led to the 'discovery' of the challenged evidence." United States v. Mendez, 315 F.3d 132, 138 (2d Cir. 2002). The agents had legitimate custody of the bag (by virtue of the plain view rule) and there is no suggestion that the contents of the bag were not the subject of a lawful inventory. See Thomas, 2015 WL 164075, at *7 n.10 (noting the absence of any argument that "the process by which the laptop and the digital camera were found in the bag was not a valid inventory search.").

Finally, the defendant has not demonstrated a "reasonable probability" that the outcome of his trial would have been different if the evidence in the bag had been suppressed. Evidence not recovered from the bag includes: MV1's testimony that petitioner promoted her prostitution, an email address containing petitioner's nickname linked to the Backpage ads, communications to MV1 on petitioner's Blackberry, and financial records corroborating MV1's testimony. This is the same evidence of petitioner's guilt that the Court of Appeals described as "overwhelming."[5]

---

[5] As the Court of Appeals noted, the evidence included travel, hotel, and credit card records connecting petitioner with MV1

11

III.

In addition to his claims alleging ineffective assistance of counsel, petitioner makes two claims that require no extended discussion because they are procedurally barred, as the government contends. He claims that his motion to suppress should have been granted. But the ruling denying the motion was affirmed on direct appeal, see Walters, 678 Fed. App'x at 46-47, so it is not open to attack here. See Yick Man Mui v. United States, 614 F.33d 50, 53 (2d Cir. 2010) ("[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal."). To the extent petitioner's attack on the denial of the suppression motion relies on arguments he did not make before the Second Circuit, any such arguments have been waived. See id. at 54; see also Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) ("In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review.").

This latter rule also bars petitioner's remaining claim, which challenges the constitutionality of his sentence. He argues that consideration of "other relevant conduct" at sentencing had the effect of modifying the grand jury indictment

---

and another minor, which showed that he paid for the minors' travel from Oregon to Connecticut. See Walters, 678 Fed. App'x at 47.

in violation of the Fifth Amendment and also exceeded the Court's jurisdiction.  Petitioner does not cite any new rule of constitutional law decided after his sentencing and therefore necessarily relies on legal authorities available to him at the time of his sentencing and appeal.  He did not raise these arguments either before me or the Second Circuit, attempts no showing of good cause or resulting prejudice, and is therefore barred from pursuing them now.

IV.

Accordingly, the petition is hereby denied.  The Clerk may enter judgment and close the case.

So ordered this 29th day of March 2022.

                                              /s/ RNC
                                      Robert N. Chatigny
                               United States District Judge